UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM LITTLE and AMY LITTLE, | CASE NO. 2:21-cv-00227-LK |
| Plaintiffs, | ORDER GRANTING DEFAULT JUDGMENT |
| v. | |
| EDWARD WOLFF & ASSOCIATES LLC, | |
| Defendant. | |

This matter comes before the Court on Plaintiffs William and Amy Little's Motion for Default Judgment. Dkt. No. 13. Having reviewed the motion, Plaintiffs' supporting materials, and the remainder of the record, the Court grants Plaintiffs' motion and enters default judgment against Defendant Edward Wolff & Associates LLC as set forth below.

## I. BACKGROUND

In June 2019, Plaintiffs "incurred certain financial obligations relating to the installation of a door in their home." Dkt. No. 1 at 4. After falling behind on payments for said door installation "due to a dispute regarding the services[] provided," the alleged debt was assigned or transferred to Defendant for collection. *Id.* In September 2020, Plaintiffs, who are Washington residents,

ORDER GRANTING DEFAULT JUDGMENT - 1

began receiving calls and texts from Defendant in an attempt to collect on the alleged debt. *Id.* at 3, 5.

On or about September 29, 2020, an individual from Edward Wolff & Associates left a voicemail on Mrs. Little's phone stating that he was "calling about an urgent matter." *Id.* at 5. On or about October 28, 2020, Defendant's representative called Mr. Little and told him that "Plaintiffs needed to either pay the money owed to the original creditor or Defendant[] would take Plaintiffs' door." *Id.* at 7. On or about December 7, 2020, Mr. Little received a call from a person named Joseph Carter, who "identified himself as a representative of Defendant" and "attempt[ed] to collect on the alleged debt[.]" *Id.* at 4. Plaintiffs further allege that someone tried to call them on behalf of Defendant on or about December 23, 2020. *Id.* at 4–5.

In addition, between September 2020 and December 2020, Plaintiffs received the following text messages from Defendant as part of its debt collection efforts:

1. I will let Boulders Ridge Sash & Doors know they will have to file suit due to your silence

2. Is it safe to assume my client will have to file suit to address this matter due to your silence?

3. Why won't you be fair about this?

4. Are you trying to tell me the only way to discuss this further is in front of a judge?

5. I will let my client know you intend on withholding the money we both know you owe . . .

6. Thanks . . . I will let my client know that you refuse to pay and to come get all of their belongings back

7. The courts will be able to see that you flat ignored every opportunity to make this right . . . and you chose to be unprofessional and take things that do not belong to you or your broke wife

8. You should think smarter about this. I cannot wait to see the look on your face . . .

ORDER GRANTING DEFAULT JUDGMENT - 2

9. Balances 15 days past due are subject to a $15 minimum and 1.5% per month

10. You are about to waste so much time and money cause you are less than reasonable

11. I will let my client know that they will have to file suite [sic], I see you like to play games

12. [S]o you fell [sic] you can just ignore this matter. Okay I will let my client know that you have zero intentions of working this out and you should be handled as such

13. Just tell the truth . . . you are refusing to pay

14. Bill will you speak with me regarding Boulder Ridge Sash and Doors or are you just planning on keeping the money you owe them

*Id.* at 5–6. Plaintiffs asked Defendant to stop contacting them on multiple occasions to no avail. *Id.* at 7. They also assert that Defendant was not a licensed collection agency in the State of Washington during the period it was contacting Plaintiffs. *Id.*

As a result of Defendant's conduct, Plaintiffs initiated this action on February 23, 2021, seeking damages pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq. Id.* at 2, 8–9. On June 30, 2021, Plaintiffs filed an affidavit of service attesting that Defendant was served with a copy of the summons and complaint on March 17, 2021 through service on Defendant's registered agent. Dkt. No. 4-1 at 2; *see also* Dkt. No. 6-3 at 2. Following Defendant's failure to appear or defend in this action, Plaintiffs moved for an entry of default and the Clerk of Court entered Defendant's default on May 20, 2022. Dkt. Nos. 6, 10. Plaintiffs moved for default judgment thereafter. Dkt. No. 13.[1] In their motion, Plaintiffs seek statutory damages in the amount of $1,000 as well as attorney's fees and costs totaling $5,311.54. Dkt. No. 13 at 16.

---

[1] On April 28, 2022 and January 12, 2023, respectively, the Court ordered Plaintiffs to show cause why the case should not be dismissed for failure to prosecute. Dkt. Nos. 5, 11. Though the Court does not condone Plaintiffs' belated pursuit of default of judgment, the Court discharges those orders to show cause.

ORDER GRANTING DEFAULT JUDGMENT - 3

## II.   DISCUSSION

**A.    Jurisdiction**

Before entering default judgment, district courts must evaluate subject matter and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). In this case, the Court has subject matter jurisdiction over Plaintiffs' FDCPA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). *See* Dkt. No. 1 at 3.

With respect to personal jurisdiction, "[t]he general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). When there is no applicable federal statute governing personal jurisdiction over a non-resident defendant, district courts apply the law of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); Fed. R. Civ. P. 4(k)(1)(A). Washington's long-arm statute is coextensive with federal due process requirements. *See* Wash. Rev. Code § 4.28.185; *Downing v. Losvar*, 507 P.3d 894, 905–06 (Wash. Ct. App. 2022) ("[T]he Washington Supreme Court has consistently ruled that the state long-arm statute permits jurisdiction over . . . foreign corporations to the extent permitted by the due process clause of the United States Constitution."). Thus, the Court must consider "whether the requirements of due process are satisfied by [its] exercise of personal jurisdiction over" Defendant. *Panavision*, 141 F.3d at 1320; *accord Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Because Plaintiffs do not contend that general jurisdiction exists over Defendant in Washington, *see* Dkt. No. 1 at 3, the Court uses the Ninth Circuit's three-prong test for determining whether a non-resident defendant is subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

Based on the above factors, the Court concludes that its exercise of specific personal jurisdiction over Defendant is proper. First, Plaintiffs allege that "all of the conduct engaged in by Defendant took place in Washington" and that "Defendant conducts substantial business within this judicial district." Dkt. No. 1 at 2–3. Namely, Plaintiffs—who reside in King County, Dkt. No. 1-1 at 1—claim Defendant contacted them in Washington by phone and text on multiple occasions over the course of several months to try and collect on a debt, including from a phone number with a Seattle area code. Dkt. No. 1 at 4–7; *see* Dkt. No. 13 at 4. Second, Plaintiffs' FDCPA claims arise directly from Defendant's conduct directed toward them in Western Washington. And last, there is no evidence in the record indicating that the Court's exercise of jurisdiction would be unreasonable. Accordingly, the Court may exercise specific personal jurisdiction over Defendant and venue is proper in this district. *See, e.g.*, *Vera v. FlexShopper, LLC*, No. 22-CV-01797-JSC, 2022 WL 4472069, at *2 (N.D. Cal. Sept. 26, 2022); *Frazier v. Am. Credit Resol., Inc.*, No. 18-CV-07729-TSH, 2019 WL 5310718, at *3–5 (N.D. Cal. Oct. 21, 2019).

**B.    Legal Standard**

Default judgment may be entered for the plaintiff if the defendant has defaulted by failing to appear and the plaintiff's claim is for a "sum certain or for a sum which can by computation be

made certain[.]" Fed. R. Civ. P. 55(a), (b). The court has discretion to grant or deny a motion for default judgment. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511-12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors in deciding whether to grant a motion for default judgment (collectively, "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72 (citation omitted).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). However, the plaintiff must establish the relief to which it is entitled. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Accordingly, "necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). In addition, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**C.   Plaintiffs Are Entitled to Default Judgment**

The Court has considered the *Eitel* factors and finds that an entry of default judgment is appropriate in this case.

### 1.   The Possibility of Prejudice to Plaintiffs

The first *Eitel* factor considers the possibility of prejudice to the plaintiff, which on a motion for default judgment, "exists where the plaintiff has no recourse for recovery other than

1    default judgment." *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash.

2    2014) (cleaned up). Here, Plaintiffs initiated this action in February 2021 and to date, Defendant

3    has failed to plead or otherwise defend itself. Plaintiffs thus face a possibility of prejudice because

4    they are left without a legal remedy absent entry of default judgment. *See Eve Nevada, LLC v.*

5    *Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022).

6         2.    The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

7         "The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency

8    of the complaint—are often analyzed together." *Curtis*, 33 F. Supp. 3d at 1211. In evaluating these

9    factors, the Court considers whether the allegations in the complaint are sufficient to state a claim

10   on which Plaintiffs may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

11   Because at least some of Plaintiffs' FDCPA claims have merit and their complaint sufficiently

12   alleges the necessary elements of said claims, the Court finds that these factors weigh in favor of

13   default judgment. *See, e.g.*, *Flores v. Flores*, 590 F. Supp. 3d 1373, 1379–80 (W.D. Wash. 2022).

14        "In order for a plaintiff to recover under the FDCPA, there are three threshold

15   requirements: (1) the plaintiff must be a 'consumer'; (2) the defendant must be a 'debt collector';

16   and (3) the defendant must have committed some act or omission in violation of the FDCPA."

17   *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009);

18   *see also Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1103–04 (W.D. Wash. 2012).

19   The FDCPA is a strict liability statute and plaintiffs do not ordinarily need to prove an intentional

20   violation. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011).

21        In this case, Plaintiffs have adequately alleged the first two requirements, i.e., that they are

22   "natural person[s] obligated or allegedly obligated to pay any debt," and that Defendant "regularly

23   collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

24   due another." 15 U.S.C. § 1692a(3), (6); *see* Dkt. No. 1 at 3–7. Plaintiffs have also sufficiently

1   established that the purported debt arises out of a consensual consumer transaction as defined

2   under 15 U.S.C. § 1692a(5). *See* Dkt. No. 1 at 4; *see also Fleming v. Pickard*, 581 F.3d 922, 925–

3   26 (9th Cir. 2009). As for statutory violations, Plaintiffs contend that Defendant's debt collection

4   efforts violated the FDCPA in at least five ways under 15 U.S.C. §§ 1692c, 1692d, 1692e, and

5   1692f. The Court notes that the same underlying factual allegations can give rise to claims under

6   multiple sections of the FDCPA. *See Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162,

7   1177 (9th Cir. 2006). Because proof of a single violation can be sufficient to recover statutory

8   damages under 15 U.S.C. § 1692k(a)(2)(A), *see Raymo v. Definitive Consulting Servs. LLC*, No.

9   CV 20-1474-RSWL-SPx, 2022 WL 874921, at *3 (C.D. Cal. Mar. 24, 2022), the Court need not

10   analyze each alleged violation.

11          The Court finds that Plaintiffs' claim that Defendant violated 15 U.S.C. § 1692c(a)(1) by

12   contacting them on several occasions before 8:00 a.m. is meritorious and sufficient to state a claim.

13   Dkt. No. 1 at 7; *see* Dkt. No. 13-4 at 11 (showing voicemail left on September 29, 2020 at 7:17

14   a.m.). Section 1692c prohibits debt collectors from communicating with consumers in connection

15   with the collection of any debt "at any unusual time or place or a time or place known or which

16   should be known to be inconvenient to the consumer," which "[i]n the absence of knowledge of

17   circumstances to the contrary," includes before 8:00 a.m. and after 9:00 p.m. local time at the

18   consumer's location. 15 U.S.C. § 1692c(a)(1); *see also id.* § 1692a(2) (defining "communication"

19   as "the conveying of information regarding a debt directly or indirectly to any person through any

20   medium"). Thus, Plaintiffs' allegations are sufficient to support a claim under Section 1692c(a)(1).

21   *See, e.g.*, *Allmendinger v. Oxford L., LLC*, No. 2:14-CV-1990-KJM-EFB, 2016 WL 146230, at *3

22   (E.D. Cal. Jan. 13, 2016), *report and recommendation adopted*, 2016 WL 10646332 (E.D. Cal.

23   Mar. 21, 2016).

24          The Court also finds that Plaintiffs' claim that the totality of Defendant's text messages

and phone calls constitute a violation of 15 U.S.C. § 1692d, "as they are harassing, oppressive, unconscionable, and unfair," Dkt. No. 1 at 7, is meritorious and sufficient to state a claim. Under this section of the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d provides a non-exhaustive list of violative conduct, including "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader," and "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *See id.* § 1692d(1)–(6). Plaintiffs allege that Defendant called them on five separate occasions between September and December 2020, including two times less than a minute apart on October 28, 2020. Dkt. No. 1 at 4–5, 7. Plaintiffs also allege that Defendant sent them 14 text messages during this period, including one stating: "The courts will be able to see that you flat ignored every opportunity to make this right . . . and you chose to be unprofessional and take things that do not belong to you or your broke wife[.]" *Id.* at 6. Plaintiffs' allegations, taken as true for purposes of the instant motion, are sufficient to establish that Defendant engaged in conduct the natural consequence of which was to harass Plaintiffs, in violation of Section 1692d. *See, e.g.*, *Kaloustian v. FarMar L. Grp., PC*, No. 8:21-CV-02082-JLS-JDE, 2022 WL 18397630, at *4 (C.D. Cal. Nov. 1, 2022).

### 3. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Here, Plaintiffs seek $1,000 in statutory damages as well as $5,311.54 in attorney's fees and costs, for a total of $6,311.54. *See* Dkt. No. 13 at 16; 15 U.S.C. § 1692k(a)(2)(A), (a)(3) (permitting recovery of statutory damages up to $1,000 as well as costs

reasonable attorney's fees as determined by the court). The total amount is relatively modest and proportional to Defendant's alleged conduct. Accordingly, this factor weighs in favor of default judgment. *See, e.g.*, *Freligh v. Roc Asset Sols., LLC*, No. 16-CV-00653-MEJ, 2016 WL 3748723, at *6 (N.D. Cal. June 8, 2016), *report and recommendation adopted*, 2016 WL 3747616 (N.D. Cal. July 11, 2016).

### 4. The Possibility of a Dispute Concerning Material Facts

As for the fifth factor, no genuine issue of material fact exists. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18.

### 5. Whether the Default Was Due to Excusable Neglect

Turning to the sixth factor, the record contains no indication that Defendant's default was due to excusable neglect. Defendant was given sufficient notice of this action through service of the summons and complaint on Defendant's registered agent in accordance with Federal Rule of Civil Procedure 4(h). *See* Dkt. No. 4-1 at 2 (affidavit of service). In addition, although Plaintiffs were not required to do so, they sent a follow-up letter to Defendant on May 21, 2021 stating their intent to request an entry of default, and subsequently also mailed their motion for entry of default to Defendant. *See* Dkt. No. 6-3 at 2; Dkt. No. 13-1 at 2. Because there is no evidence of excusable neglect, this *Eitel* factor favors the entry of a default judgment.

### 6. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive," because Rule 55 allows a court to issue a default judgment if the defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177

(cleaned up). Therefore, although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not preclude the entry of default judgment where, as here, Defendant has failed to appear or defend and the other *Eitel* factors weigh in favor of entering a default judgment.

For the reasons discussed above, the Court finds that the *Eitel* factors weigh in favor of entry of default judgment.

**D.      Plaintiffs Are Entitled to the Relief They Seek**

Having found that entry of default judgment is warranted, the Court turns to the relief Plaintiffs seek.

1.      Statutory Damages

A debt collector "who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of . . . any actual damage sustained" and "such additional damages as the Court may allow, but not exceeding $ 1,000[.]" 15 U.S.C. § 1692k(a). As mentioned above, Plaintiffs seek $1,000 in statutory damages for Defendant's alleged violations. *See* Dkt. No. 1 at 9. Based on Defendant's purported conduct, which included repeated calls and inappropriate text messages, the Court finds that a $1,000 award is proper given the nature of the complained-of conduct and in the interests of deterrence. *See* 15 U.S.C. § 1692k(b)(1); *see also, e.g.*, *Neuman v. Swiftfunds Fin. Servs., LLC*, No. C20-931-RSM, 2020 WL 7028947, at *3 (W.D. Wash. Nov. 30, 2020); *Taylor v. Asset, Consulting Experts, LLC*, No. 2:18-CV-236-RSL, 2019 WL 2248102, at *3–4 (W.D. Wash. May 24, 2019).

2.      Attorney's Fees and Costs

In addition, Plaintiffs request an award of $4,802.54 in attorney's fees and $509.04 in costs as the prevailing party in the action. *See* Dkt. No. 1 at 9; Dkt. No. 13 at 12–16. The FDCPA authorizes district courts to award costs, "together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). For the reasons below, the Court awards Plaintiffs a total

of $5,331.54 in attorney's fees and costs.

(a) *Attorney's Fees*

To establish the reasonableness of its requested attorney's fees, Plaintiff uses the "lodestar" method, Dkt. No. 13 at 13–14, which involves multiplying the number of hours reasonably expended on the claim or motion by a reasonable hourly rate. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987); *see also* LCR 55(b)(2)(C). In calculating the lodestar figure, the Court should consider any of the relevant factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). In this case, relevant *Kerr* factors include: the time and labor required, the novelty and difficulty of the questions involved, the requisite skill required, the amount involved and the results obtained, and the experience, reputation, and ability of the attorneys. *See id.*

In their motion for default judgment, Plaintiffs state that they have incurred a total of $4,802.50 in attorney's fees, consisting of 11.3 hours billed at an hourly rate of $425 by Ryan L. McBride, Managing Associate Attorney at Kazerouni Law Group. Dkt. No. 13 at 14–15; *see also* Dkt. No. 13-1 at 2, 4, 6; Dkt. No. 13-4 at 17–18.

The Court finds $425 per hour to be reasonable in this case. Reasonable fees "are to be calculated according to the prevailing market rates in the relevant community[.]" *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community "is the forum in which the district court sits," *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008), and courts may consider "rate determinations in other cases." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The Court may also rely on its own knowledge and familiarity with the legal market in setting a reasonable rate." *Abrams v. Sequium Asset Sols., LLC*, No. 21-CV-05374-LK, 2023 WL 2757195, at *4 (W.D. Wash. Mar. 31, 2023) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam)). In his declaration, Mr. McBride attests that he has been

awarded between $350 and $400 per hour in FDCPA cases between 2019 and 2022, and that he

has "undergone extensive training in the area of the fair debt collection practices" over the past

several years. Dkt. No. 13-1 at 3–5. And although this hourly rate is slightly above rates deemed

reasonable in similar contexts in this district, *see, e.g.*, *Neuman*, 2020 WL 7028947, at *3 (finding

$344.50 per hour to be reasonable); *Smart v. Emerald City Recovery, LLC*, No. C18-0448-JCC,

2019 WL 366205, at *3 (W.D. Wash. Jan. 30, 2019) (finding $350 per hour to be reasonable), the

Court finds it to be within the range of reasonable hourly rates awarded in recent FDCPA actions

in this market and therefore appropriate here. *See, e.g.*, *Rodriguez v. Evergreen Pro. Recoveries,

Inc.*, No. C19-0184-JCC, 2021 WL 2577130, at *3 (W.D. Wash. June 23, 2021) (awarding hourly

rates of $475 per hour and $400 per hour in class action settlement involving FDCPA claim).

With respect to the reasonableness of the number of hours billed, the Court notes that

Plaintiffs bear "the burden of documenting the hours expended on this matter and establishing their

reasonableness." *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1137 (W.D. Wash. 2019)

(citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). As an initial matter, Mr. McBride avers

that he has reduced the number of hours claimed by approximately three hours "based on

reasonable billing discretion." Dkt. No. 13-1 at 6. And while this case was not overly complex or

novel, Plaintiffs' success in obtaining a default judgment is a factor, and the Court finds that the

billing summary submitted by Mr. McBride reflects a reasonable number of hours spent advancing

the litigation. *See* Dkt. No. 13-4 at 17–18. Therefore, upon thorough review of the record, the Court

concludes that 11.3 hours is a reasonable number of hours expended. Accordingly, Plaintiffs are

entitled to $4,802.50 in attorney's fees.

*(b) Costs*

Finally, the Court finds that Plaintiffs have adequately supported their request for $509.04

in costs, which is comprised of a $402 filing fee, a $105 process server fee, and $2.04 in printing,

postage, and packing slip fees. Dkt. No. 13-4 at 19; *see* 15 U.S.C. § 1692k(a)(3).

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Default Judgment. Dkt. No. 13. Default judgment shall enter in favor of Plaintiffs and against Defendant, as follows:

1.      Plaintiff is AWARDED $1,000 in damages for violations of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

2.      Plaintiff is AWARDED $4,802.50 in attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

3.      Plaintiff is AWARDED $509.04 in costs pursuant to 15 U.S.C. § 1692k(a)(3);

4.      Interest shall accrue on this judgment pursuant to 28 U.S.C. § 1961(a).

Dated this 22nd day of September, 2023.

Lauren King
United States District Judge